IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID S. RALSTON II, | ) | 4:04CV3135 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER of the SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

David Ralston II ("David")[1] appeals the denial of his application for supplemental security income benefits. I will remand to the Commissioner, as the testimony of the vocational expert is equivocal, and the Commissioner has failed to meet the burden of establishing that the claimant is capable of performing jobs in the regional economy.

## I. BACKGROUND

David's father applied on David's behalf for child's supplemental security income benefits. While this application was pending, David reached age 18. The application for benefits for David was properly considered both under the regulations applicable for a child and the regulations applicable for an adult. (Tr. 31.) The only questions on appeal before me relate to the adult application. (Filing 18 at 15 (Commissioner's brief observed that David did not challenge the ALJ's reasoning that

---

[1]As the claimant and his father share the same name, I refer to the claimant as "David" and to the claimant's father as "David's father."

he was not disabled for purposes of the child application, and this statement was not challenged in David's reply brief.).)

It is undisputed that David suffers from a learning disability, and has many moderate restrictions imposing functional limitations. He received special education services in school. As part of those services, he participated in a job shadowing program where he worked for a short time as a shop cleaner. When his employer assessed David's job performance at the end of the program, he stated that he would not employ or rehire David because he would look for someone with more capabilities, as David needed close supervision in some aspects of the job.

The record before the ALJ included intelligence and performance testing from David's school, as well as several psychological evaluations. It also included a Psychiatric Review Technique Form completed by a DDS physician (Ex. 5F, found at Tr. 214-227) and a mental residual functional capacity assessment form completed by a DDS physician (Ex. 6F, found at Tr. 228-234). The ALJ's opinion failed to address the assessments by DDS: it neither noted them nor discounted them. Gary Gard, Ph.D., a clinical psychologist, testified at the hearing before the ALJ as a medical expert. He found that David had several moderate limitations, but not as many as the DDS physicians had identified.

## II. REVIEW

The fundamental problem on appeal is that the vocational expert's testimony was equivocal due to gaps in the evidence presented to him. David raised other issues on appeal, and I briefly dispose of them before reaching the vocational expert's "opinion."

David asserted that the ALJ failed to give proper weight to the opinions of Dr. Gard, who testified at the hearing, and the state disability examiners. However, the

hypothetical posed by the ALJ included all limitations imposed by Dr. Gard. Compare Tr. 353-58 (Dr. Gard's testimony as to limitations) with Tr. 362-64 (limitations in hypothetical posed by ALJ). In addition, David's attorney asked the vocational expert a hypothetical question including the limitations imposed by the state agency doctors, and the expert opined that he was not sure whether a person with those limitations could work. (Tr. 367-68.) Even with the limitations imposed by the state disability examiners, the vocational expert's opinion as to David's ability to work was equivocal.

David also asserts that the ALJ failed to properly evaluate his credibility, in part by failing to separately discuss each Polaski factor. This assertion is without merit. The ALJ found that "the testimony of the Claimant and his father was generally credible except with respect to any allegation of total disability." (Tr. 36.) The limitations suggested by David's testimony were incorporated into the hypothetical question posed by the ALJ to the vocational expert. (Tr. 362-64.) In addition, the ALJ's credibility analysis was adequate because it noted specific inconsistencies between David's testimony and the record as a whole. Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000) (An ALJ may discount a claimant's complaints based on inconsistencies in the record as a whole.). The ALJ is not required to discuss methodically each Polaski consideration, so long as the ALJ acknowledges and examines those considerations (as he did here, Tr. 32-33) before discounting the subjective complaints. Id. (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996)).

I turn now to the problems with the vocational expert's opinion. Review of the vocational expert's testimony at the hearing reveals that the vocational expert did not give an unequivocal opinion as to David's ability to work full time in the regional economy, given David's residual functional capacity as described by the ALJ. The vocational expert stated that he was not sure, and needed more information before he could answer. This is the substance of the vocational expert's testimony.

3

| | |
|---|---|
| ALJ: | Assume for purposes of all the following hypothetical questions that the Claimant is 19 years–no, he's 18 years of age and has educational abilities commenced with 11th grade. We need to take into consideration the job assessment at 11E, the test scores at 8F. We need to define moderate as there is moderate limitation in this area but the individual's still able to function satisfactorily. Moderate carry out, understand–no carry out simple instructions. Moderate understand and remember detailed instructions. Moderate carry out detailed instructions. Moderate the ability to make judgments on simple work-related decisions. Moderate interact with the public. Moderate interact with supervisor. Moderate interact with coworkers. Moderate respond appropriately to work pressures in a usual work setting. Moderate respond appropriate to changes in a routine work setting. And then we have moderate restrictions of activities of daily living. Moderate difficulties in maintaining social functioning. Moderate difficulties in maintaining concentration, persistence and pace. And we have Dr. Gard's [medical expert testifying at hearing] testimony that if the job involved more than a minimal interaction with people and more than simple instructions that he wouldn't be able to function in a job situation. He needs simple instructions with little interaction with people. **Do you think he would be able to function as a janitor or a cleaner?** |
| VE: | Under that hypothetical I think he could, Your Honor. One moment– |
| ALJ: | And how many – |
| VE: | –Your Honor. |
| ALJ: | –of those jobs would there be? |
| VE: | Could I have one moment, Your Honor? |

4

ALJ:      Um-hum.

VE:       You pointed out some exhibits and I just –

ALJ:      Yes.

VE:       **–now–I need to look at those [exhibits 11E and 8F]–**

ALJ:      Okay.

VE:       **–before I really answer that.**

ALJ:      And 11E is the job evaluation that he had during school, and 8F is the test scores.

VE:       I don't have 11E.

ALJ:      [Summarizing Exhibit 11E, the work performance assessment from the claimant's high school job shadowing position as a shop cleaner] Okay. Let's see, "11E, pick up tools, sweeping helper, **need close supervision**. Is the quantity sufficient to meet demands? Yes. Can the individual understand and remember short and simple? Yes. **Can the individual carry out simple–short and simple and sustain a routine? He needed more supervision**. **Can the individual maintain attention and concentration for extended periods and perform at a consistent basis? He needed more supervision.** Was the individual able to perform activities within his schedule and maintain adequate attendance? Yes. Did the individual relate appropriately to supervisors? Yes. Did the individual relate appropriately to coworkers? Yes. **Could the individual make simple work-related decisions and plans? Most of the time.** Was the individual able to adapt to change in the work setting? Yes. Was the individual able to maintain safe behavior by being aware of normal hazards? Yes. Was the individual paid at the same rate as

|      | |
|------|-|
|      | other individuals performing the same duties? Yes. Please describe any special considerations. He began under a shadowing program while he was in high school. **Were you sufficiently satisfied with the individual's performance that you would employ or rehire? I would look for someone with more capabilities."** And this was shop cleaning shadow programming, 5.50 an hour. |
| VE:  | **That would modify my answer a little bit, Your Honor. The answer to that would be I don't know for sure. I don't know whether there was something specific in that job that gave him problems. It would appear on the surface that there might be the possibility he could do those kinds of jobs but I would look at other types of unskilled jobs.** |
| ALJ: | Oh, what would you look at that would be better than the janitor? |
| VE:  | Well, I'd look at assembly type of jobs. |
| ALJ: | Okay. How many of those would there be? |
| VE:  | There'd be–in the State of Nebraska there'd be in the sedentary about 569, in the light about 2,714, in the medium about 875. |
| ALJ: | And why would this be better than the janitor? |
| VE:  | **Well, I don't know except for that [it] bothers me that the employer was dissatisfied with how they were functioning on the job, didn't think they had the ability to perform that.** |
| ALJ: | Is it a simpler kind of job? |

6

| | |
|---|---|
| VE: | **It's a kind of job that may not require as much close attention to detail.**  Both of them are unskilled, both of them fairly simple. |
| ALJ: | Now, would a Goodwill assessment or some kind of assessment help us in determining whether he could actually perform these jobs? |
| VE: | Yes. |
| ALJ: | And what kind of assessment would you recommend? |
| VE: | Well, I think and [sic] on-the-job assessment such as the Goodwill offers would be useful because they'd be able to assess his attention to detail, his consistency of task. |
| ALJ: | Okay.  Social Security doesn't do very many of these anymore because they cost money but they do it sometimes, so let's try and get a Goodwill assessment unless you try– |
| ATTY: | I'm much in favor of that. |
| ALJ: | –and get the information from the teacher.[2] |
| ATTY: | Well, I'm going to try that. |
| ALJ: | Okay.  Do you [claimant's attorney] have any questions? |
| | . . . |

---

[2]David's father testified that David received more assistance than the other students in his special education classes.  Dr. Gard, the medical expert, indicated that it would be useful to know the quantity and nature of the assistance David received and how the special education teacher thought David would function without assistance in a regular classroom. (Tr. 349-50.)

7

| | |
|---|---|
| ATTY: | Okay. . . . **If you were to take someone with the Claimant's age, educational background and work profile and include with it the limitations that were identified in Exhibit 5F, [page] 11 and 6F, pages 1 and 2 –**[3] |
| | . . . |
| | . . . **Would such a person be able to do any work in the national economy with all of those limitations which are virtually all moderate limitations?** |
| VE: | **I think there a possibility they could. I'd be concerned about it if they could do it over a long period of time**, and the one that specifically jumps out to me is the episodes of decompensation. Even though it mentions one or two I don't know how many decompensations or how severe – |
| ALJ: | Yeah. What– |
| VE: | –happened over a period of time. |
| ALJ: | –decompensations were you relating to? |
| ATTY: | I'm relating to the ones that Dr. Brayman identified in Exhibit 6– |
| ALJ: | Yeah. But do you know– |
| ATTY: | –5F. |

---

[3]The referenced limitations appeared in the psychiatric review technique form and mental residual functional capacity assessment completed by DDS physicians. The DDS physicians noted one or two episodes of decompensation. The ALJ's opinion did not address the DDS assessments.

| | |
|---|---|
| ALJ: | What they are? |
| ATTY: | I don't know what they are. |
| ALJ: | Okay. So he [the vocational expert] can't answer that question then. |
| ATTY: | Because he's [the claimant has] not had any hospitalizations which – |
| ALJ: | Right. |
| ATTY: | –normally–you know, normally give rise to that. |
| ALJ: | Okay. |
| ATTY: | And it could very well be there's just the failed–failure to function in school was a decompensation. I don't know that. |
| ALJ: | Okay. |
| ATTY: | **So your concern with this hypothetical would be as to the ability to sustain work** – |
| VE: | Yes. |
| ATTY: | **–with all–with the myriad of all these problems?** |
| VE: | **That's correct.** |
| ATTY: | No further questions, your Honor. |
| ALJ: | Okay, Dr. Gard [medical expert], do you have any comments? |
| ME: | No. I don't. |

| | |
|---|---|
| ALJ: | Okay.  Do you have any closing remarks? |
| ATTY: | I have one more question. |
| ALJ: | Okay. |
| ATTY: | **If we were to take the testimony of the Claimant and his father today and to believe that, Dr. Keeman, would such a person be able to do any work in the national economy?** |
| VE: | **I think essentially it would–my answers would stay the same.  I think that it'd just reinforce my concerns but not rule in or rule out.** |

(Tr. 362-69 (emphasis added).)

As the vocational expert did not clearly opine that David could perform jobs in the regional economy, I must reverse the decision of the Commissioner.  As David hd no previous relevant work the burden is on the Commissioner to show that David is capable of performing jobs that exist in significant numbers in the economy. Osborne v. Barnhart, 316 F.3d 809, 812 (8th Cir. 2003) (when claimant who had substantial impairments that did not meet the listings had no prior work history, Commissioner had burden of proving a significant number of jobs existed that claimant could perform.).  The Commissioner has not met that burden.

On remand, the ALJ must develop the record to fill in the information gaps apparent in the colloquy with the vocational expert (Goodwill assessement or other clarification of David's capability to work given job shadowing employer's statement that he would not hire him, details regarding nature of assistance David received in his special education classes, and nature of the one or two episodes of decompensation noted by the state disability doctors). Bowman v. Barnhart, 310 F.3d

10

1080, 1082-85 (8th Cir. 2002) (ALJ has duty to fully and fairly develop the record, even when claimant is represented by counsel). In addition, on remand the ALJ should address the evidence from the DDS physicians (Exhibits 5F and 6F), and either adopt those opinions or properly discount them. See, e.g., SSR 96-6p (consideration of findings of fact by state agency medical and psychological consultants).

### III. CONCLUSION

For the foregoing reasons, I find that the Commissioner's determination that David is capable of performing jobs in the regional economy is not supported by substantial evidence on the record as a whole.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is reversed, and the cause is remanded for reevaluation of David's ability to work in the regional economy, given his limitations. Judgment will be entered by separate order.

June 27, 2005.                              BY THE COURT:

                                            *s/ Richard G. Kopf*
                                            United States District Judge